IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOHN TALLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-3201 |
| | ) | |
| FREEDMAN ANSELMO | ) | |
| LINDBERG LLC; and DOES | ) | |
| 1-10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

This cause is before the Court on cross-motions for summary judgment. Defendant's Motion for Summary Judgment (d/e 46) is GRANTED IN PART and DENIED IN PART and Plaintiff's Motion for Summary Judgment (d/e 47) is DENIED. Summary judgment is entered in favor of Defendant and against Plaintiff on Plaintiff's claims that Defendant (1) violated § 1692e of the Fair Debt Collection Practices Act (FDCPA) by threatening to take any action that could not legally be taken or that was not intended to be taken; (2) violated § 1692g of the

FDCPA by overshadowing Plaintiff's right to dispute the debt; (3)
violated §§ 1692e(2) and (10) of the FDCPA by misrepresenting the
entity that transferred the debt to Defendant for collection; and (4)
violated § 1692e(2)(A) and § 1692f by misrepresenting the amount of
the debt due.  Defendant has not demonstrated that Defendant is
entitled to summary judgment on Plaintiff's claim that Defendant
violated § 1692e(10) by representing that judgment was inevitable and
attorney fees would apply.  Counts II through IV, having been
withdrawn, are dismissed, as are the Doe Defendants.

## I.  INTRODUCTION

On July 8, 2011, Plaintiff John Tallman filed suit against
Defendant Freedman, Anselmo Lindberg LLC and Does 1-10 inclusive.
On February 22, 2012, Plaintiff filed a Second Amended Complaint
against Defendant and Does 1-10 alleging violations of the Fair Debt
Collection Practices Act (FDCPA) (15 U.S.C. § 1692 <u>et</u> <u>seq</u>) (Count I),
the Illinois Collection Agency Act (225 ILCS 425/1 <u>et</u> <u>seq.</u>) (Count II),
the Illinois Consumer Fraud Act (815 ILCS 505 <u>et</u> <u>seq.</u>) (Count III), and

intentional infliction of emotional distress (Count IV).  The Second Amended Complaint alleges that Defendant, operating as a collection agency, engaged in harassment and abusive tactics while attempting to collect a debt from Plaintiff.  With regard to Count I, Plaintiff alleges Defendant violated the FDCPA in the following ways: (1) threatening to take legal action, without actually intending to do so (§ 1692e(5)); (2) overshadowing Plaintiff's right to dispute the debt within 30 days of receiving the letter (§ 1692g(b)); (3) misrepresenting the character, amount, and legal status of the debt (§ 1692e(2)); (4) attempting to collect an amount not authorized by the agreement creating the debt (§ 1692f(1)); (5) employing false and deceptive means when attempting to collect a debt ((§ 1692e(10)); and (6) employing unfair or unconscionable means to collect a debt (§ 1692f)).  See Second Amended Complaint, ¶¶ 22-27 (d/e 26).

Defendant moves for summary judgment on all counts.  Plaintiff moves for summary judgment on portions of Count I.  In addition, Plaintiff asserts, in his Memorandum in Opposition to Defendant's

Motion for Summary Judgment (d/e 50), that he informed Defendant
that he was withdrawing the state law claims (Counts II, III, and IV).

## II.  FACTS

On September 16, 2003, Plaintiff went to a Beneficial location in
Alton, Illinois, to complete an application for a loan.  Plaintiff's
Undisputed Fact No. 8.  The Loan Summary document reflects that the
loan was for a principal amount of $4,999.64 with an annual percentage
rate of 26.901%, a contract rate of 26.901%, and monthly minimum
payments of $152.37.  Plaintiff's Undisputed Fact No. 9.  The parties
dispute whether Plaintiff made payments on the loan for approximately a
year and a half but agree that Plaintiff stopped making payments after he
lost his job and was unable to continue to pay.  See Plaintiff's
Undisputed Facts No. 11, 12; Defendant's Mem. in Opp. (d/e 51) (also
asserting both facts are immaterial).

In 2011, Plaintiff received a collection letter from Defendant dated
May 27, 2011.  Plaintiff's Undisputed Fact No. 15.  The May 27 letter
identified "HSBC" as the original creditor and set forth the balance

claimed as $5,943.23.  Plaintiff's Undisputed Facts No. 23, 25; see also

Defendant's Undisputed Fact No. 8 (noting that the initial demand letter

sought "payment of $5,943.23 on the HSBC/Beneficial debt").  The

letter also advised Plaintiff of his right to dispute the debt (commonly

referred to as the "validation notice"), pursuant to the FDCPA.

Defendant's Undisputed Fact No. 8.

Prior to receiving the May 27, 2011 letter, Plaintiff had been

dealing with Defendant concerning a separate account (hereinafter, the

First Account).  Plaintiff's Undisputed Fact No. 20.  On the First

Account, Defendant filed a lawsuit in 2009 against Plaintiff on behalf of

its client, Asset Acceptance, LLC (Asset).  Plaintiff's Undisputed Fact No.

21.  The parties entered into a payment arrangement pursuant to a

stipulation, which provided that Plaintiff would make payments of $115

per month on the First Account.  Plaintiff's Undisputed Fact No. 22.

On June 9, 2011, after receiving the May 27 letter, Plaintiff called

Defendant and spoke to Kathleen Prebis.  See Plaintiff's Undisputed Fact

Nos. 26, 36, 37.  The parties agree that during the call, Plaintiff told

Prebis that all he could afford were the payments of $115 he was already making to Defendant on the First Account.  Plaintiff's Undisputed Fact No. 37.  Plaintiff requested that these payments continue after the First Account was satisfied and then be directed to the new debt.  Plaintiff's Undisputed Fact No. 38.  The parties disagree about the rest of the call.

### *Plaintiff's Version of the Phone Call*

In his Affidavit, Plaintiff states that when he called Defendant on June 9, 2011, he told the person who answered that he did not know what the account was for and that the amount sought was not correct.  Pl.'s Aff. ¶ 20.  Plaintiff was told that the account was with Asset, who turned it over to Defendant.  Pl.'s Aff. ¶ 21.  Plaintiff was then transferred to a female employee.  Pl.'s Aff ¶ 22.

At his deposition, Plaintiff testified that he told the female employee (Kathleen Prebis) during the June 2011 phone call that the amount of the debt was not right.  Dep. p. 35.  He later testified in his deposition, however, that he did not contest or ask about the balance during the phone call.  Pl.'s Dep.  pp. 42, 43.  Plaintiff testified:

> It–it really just didn't dawn on my mind at that
> time.  I was–only thing I was concerned about is
> making agreement with 'em to pay it.

Pl.'s Dep. p. 42; <u>see</u> <u>also</u> Pl.'s Dep. p. 106 (when asked if in the first call

he brought up the issue of the balance, Plaintiff testified, "No, sir.");

Dep. p. 107 (also testifying that he never sent a letter contesting the

amount of the debt).

Plaintiff wanted to finish paying the First Account, which would be

paid in full around February 2012, and then apply the $115 payments to

the second account.  Pl.'s Dep. pp. 44-46.  Plaintiff further testified that

during the June 2011 phone call, Prebis wanted Plaintiff to pay $115 for

four months and then pay the remaining balance within six months.  Pl.'s

Dep. pp. 35, 46, 61.  Plaintiff told Prebis he could not do that.  Pl.'s

Dep. p. 35, 61.  Prebis responded that "we'll just have to go get a

judgment against you."  Pl.'s Dep. p. 61; <u>see</u> <u>also</u> Pl.'s Dep. p. 126

(testifying that he was told if he did not make payments of $115 a

month followed by payment in full within six months, Defendant would

take Plaintiff to court and get a judgment against him).  Plaintiff further

testified that he was told, during the same phone call, that if Defendant took him to court and got a judgment against him, attorney fees "and all that stuff would apply to this loan."  Pl.'s Dep. p. 105.

In his Affidavit, Plaintiff also states that Prebis told him that if he did not make payments on the account now, Defendant would sue him, take him to court, and get a judgment against him.  Pl.'s Aff. ¶ 26.  She also told him he was a deadbeat and to get a real job.  Pl.'s Aff. ¶ 27.

### Defendant's Version of the Phone Call

Prebis testified she speaks to hundreds of people every day and only vaguely recalled her conversation with Plaintiff after reviewing the notes. Prebis Dep. p. 23.  Prebis testified that she told Plaintiff she was a collector and not an attorney, the communication was an attempt to collect and debt, and any information obtained would be used for that purpose.  Prebis Dep. p. 55.        Prebis also told Plaintiff that the call may be monitored or recorded.  Prebis Dep. p. 55.  However, no recording of this phone call was found.  When the recording of this call was pulled, there was no recording after the call was transferred to Prebis'

extension.  Prebis Dep. p. 43.

Because Plaintiff indicated he wanted to make a payment arrangement, Prebis took Plaintiff's financial profile to see if Defendant could work out monthly payments with Plaintiff.  Prebis Dep. pp. 55-56. After Prebis obtained information about Plaintiff's budget, Prebis believed they discussed a temporary payment plan.  Prebis Dep. p. 57. Prebis testified:

> He was looking to try to do a payment plan for under what I can approve a payment plan, and I advised it would be just a temporary payment plan as to what he had on the linked account [(First Account)] for approximately nine months before it went into a payment plan for the full balance and just gave him some other options.  Because it appears he did not want a suit filed on this account.  And so I advised him if we can wrap this up in six months, we cannot move forward with any kind of suit.

Prebis Dep. p. 58.  She offered him a temporary payment plan of $103:

> Q.  So I read here in the account notes that you offered him a payment plan of $103 for four months, a temporary payment plan, correct?
>
> A.  That would have been a temporary payment plan.

Q.  And you advised him that Asset Acceptance
would still have to move forward with a suit if he
decided to go with the temporary plan, correct?

A.  On a temporary plan, it's not aggressive
enough for us to just – we can't just hold a file.

Q.  What did you mean by moving forward with
suit, by the way?

A.  Once again, it's not a – on a temporary
payment plan, it's like a good faith payment. $103
a month is not – on a balance of this size would
not be a payment plan that I can – I don't have
authorization to hold an account for $103 a
month of a payment.

Q.  And so his only other option was to pay $990 a
month for six months, each month, correct?

A.  That's not his only option.  He can obviously pay
whatever he likes.  It would have gone to the balance.
However, we are given a six-month time frame to resolve
the debt, and taking that balance and dividing it into six
months was obviously approximately the 990 per
month.

Prebis Dep. p. 58-59.

Prebis testified that, if an account is not resolved in six months, the

account is reviewed.  Prebis Dep.  p. 59.  If a decision is made to file suit,

Defendant is "going to motion for a judgment."  Prebis Dep.  p. 59.  It is

not her decision whether to file suit.  Prebis Dep.  p. 60.  When asked if she advised Plaintiff that the case would go to suit, she testified that it was a possibility.  Prebis Dep. p. 63.

Defendant's account notes reflect the following relating to the phone call:

> HE WANTED TO KNOW IF HE SHOULD ADD
> TO LINKED PYMT OR START A NEW PPA
> FOR THIS FILE. ADV WITH A TEMP PPA
> WOULD NEED ABOUT 104 PER MO. AND
> CAN ONLY DO FOR APPROX 4 MONTHS.
> ADV WILL STILL HAVE TO MO FORWARD
> WITH SUIT ON A TEMP PLAN.  HE DID NOT
> WANT THAT TO HAPPEN ADV THE ONLY
> WAY TO STOP IS A 6 MO PPA FOR 990 PER
> MO. HE SAID NO WAY TO DO THAT.  HE
> SAID NOT SURE WHAT HE IS GONNA DO
> MAY SPEAK TO AA.  ADV WILL NOTATE FILE

See Exhibit to Prebis Deposition (FAL0000048).

*Facts Pertaining to Defendant's Intent to File Suit*

A May 31, 2011 entry in Defendant's account notes indicate "PREPARE SUIT IF READY," which is the diary code to review the file within 35 days to determine whether it is suit worthy.  Defendant's Undisputed Fact No. 9.  On June 22, 2011, a paralegal for Defendant

reviewed the account for suit and directed the account to the legal

processing team "to initiate the steps taken for a file in Montgomery

County, a small claims file in Montgomery County, to initiate the steps

to prepare the suit papers."  Defendant's Undisputed Fact No. 13.  On

June 27, 2011, Defendant sent a letter to co-counsel in Montgomery

County, where the suit would be filed, to obtain a court date for the

summons and complaint.  Defendant's Undisputed Fact No. 14.  After

Plaintiff filed the instant lawsuit in federal court, Defendant placed a

"cease and desist" on the account and suspended any further lawsuit

preparation.  Defendant's Undisputed Fact No. 15.

*Facts Pertaining to the Assignment of the Debt*

Kenneth Proctor, the litigation manager of Asset, identified the

Asset Purchase and Sale Agreement (Agreement), dated August 6, 2010

as a document maintained in the regular and ordinary course of Asset's

business.  Proctor Dep. pp. 10-11 (attached to d/e 58; see also Exhibit Q

(d/e 61-1)).  The Agreement was made between HSBC Consumer

Lending (U.S.A.) Inc., on behalf of and as managing company for

Beneficial Company, LLC, and HFC Company, LLC and their respective subsidiaries (Seller), and Asset (Purchaser) and reflected the purchase by Asset of a portfolio of accounts.  Proctor Dep. p. 12.  One of the accounts was Plaintiff's account.  Proctor Dep. pp. 18-20.  The information Asset received about Plaintiff's account included an account number, first and last name, social security number, address, phone number and a balance of $4,731.28.  Proctor Dep. p. 20.  Once that account was transferred to Asset, the account began accruing interest at 10%.  Proctor Dep. p. 20, 32.  Proctor did not know the date on which Asset began charging interest (e.g. whether Asset charged interest for the period of time prior to the date of the Purchase and Sale Agreement).

Louis Freedman, an attorney and the managing member of the collections group for Defendant, testified that the client (Asset) asked Defendant to collect $5,943.23.  Dep. p. 65, 68.  When asked whether the law firm had a policy with respect to verifying that the balance being collected is correct, Freedman testified that the policy is to review the downloaded notes as well as the account card screen to verify that the

numbers add up to the balance the client is seeking.  Dep. p. 65.  The debt does not continue to accrue interest once it is placed with Defendant for collection.  Dep. p. 66.

When asked if he had any way of verifying whether the amount being sought from Plaintiff was correct, Freedman testified that he believed he had the right to rely on the records supplied to him by his client, as well as the sworn Affidavit from the client that evidenced the amount that the client claimed was due.  Dep. p. 103.  Defendant did not perform an independent investigation of the amount due.  The sworn Affidavit from the client indicated a balance due of $5,943.23. Dep. p. 104.  Freedman further testified that Defendant would not have filed the lawsuit against Plaintiff on June 9, 2011 because it was within the "35-day validation period" and his office does not file suit within the validation period.  Dep. p. 118.

## III. LEGAL STANDARD

A court may grant summary judgment only if the "the movant shows there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); <u>see</u> <u>also</u>,

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A moving party

must show that no reasonable fact-finder could return a verdict for the

non-moving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

252 (1986); <u>Gleason v. Mesirow Fin., Inc.</u>, 118 F.3d 1134, 1139 (7th

Cir. 1997).  If the movant meets this burden, the non-movant must set

forth specific facts demonstrating that there is a genuine issue for trial.

<u>Anderson</u>, 477 U.S. at 252.

Facts must be viewed in the light most favorable to the non-moving

party, and all reasonable inferences must be drawn in favor of the non-

movant.  <u>See</u> <u>Trentadue v. Redmon</u>, 619 F.3d 648, 652 (7th Cir. 2010).

In this case, the parties filed cross-motions for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Therefore,

this Court must view all facts and draw all reasonable inferences in the

light most favorable to the Plaintiff when reviewing Defendant's Motion

and in the light most favorable to the Defendant when reviewing

Plaintiff's Motion.  <u>See</u> <u>Gazarkiewicz v. Town of Kingsford Heights, Ind.</u>,

359 F. 3d 933, 939 (7th Cir. 2004).

## IV.  ANALYSIS

Defendant seeks summary judgment on all of Plaintiff's claims that Defendant violated the FDCPA.  Plaintiff seeks summary judgment on his claims that Defendant violated the FDCPA by threatening to take legal action or initiate a law suit when Defendant could not legally take such action (§ 1692e(5), § 1692e(10)) and by overshadowing Plaintiff's right to the dispute the debt (§ 1692g(b)).

**A.** **Defendant is Entitled to Summary Judgment on Plaintiff's Claim that Defendant Violated § 1692e By Threatening to Take an Action That Could Not Be Legally Taken or that Was Not Intended to Be Taken**

Section 1692e of the FDCPA prohibits the use of false, deceptive, or misleading representations or means in connection with the collection of a debt.  The statute contains a nonexhaustive list of 16 types of conduct that violate the § 1692e.  See Allen v. Bank of America, N.A., 2012 WL 5412654, at *10 (N.D. Ill. 2012) (noting that the 16 subsections listed in § 1692e are nonexhaustive).

Pursuant to § 1692e(5), a debt collector violates the FDCPA if it

threatens "to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).  Section 1692e(10) prohibits "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(10); see also Gaetano v. Payco of Wisc., Inc., 774 F. Supp. 1404, 1408 (D. Conn. 1990) (treating a claim that the Defendant violated the FDCPA by threatening to sue when it had no intention or ability to sue as a potential violation of both 15 U.S.C. § 1692e(5) and e(10)).

Plaintiff alleges that Defendant violated §§ 1692e(5) and (10) of the FDCPA when Defendant (through Prebis) threatened to file suit against Plaintiff without actually intending to do so or when Defendant did not have the authority or ability to do so.

Defendant moves for summary judgment asserting that the undisputed facts show that (1) no threat of litigation was made, and (2) Defendant had authority from Asset to file suit on the account and was fully prepared to do so.  Plaintiff moves for summary judgment asserting

that the undisputed facts show that (1) Defendant did threaten Plaintiff with a lawsuit; and (2) the threat was false because Defendant did not have, nor could it obtain at the time of the threat, an assignment that complied with § 8b of the Collection Agency Act.

1.   Factual Dispute Remains Whether Defendant Threatened to File Suit

In the Seventh Circuit, communications by debt collectors are viewed "through the eyes of an unsophisticated consumer."  Jang v. A.M. Miller & Assoc., 122 F.3d 480, 483 (7th Cir. 1997).  The Seventh Circuit has described an "unsophisticated consumer" as follows:

> The "unsophisticated consumer" isn't a dimwit. She may be "uninformed, naive, [and] trusting," Veach v. Sheeks, 316 F.3d 690, 693 (7th Cir. 2003), but she has "rudimentary knowledge about the financial world" and is "capable of making basic logical deductions and inferences," Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057, 1060 (7th Cir. 2000). If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA-even if it is false in some technical sense.

Wahl v. Midland Credit Management, Inc., 556 F.3d 643, 645 (7th Cir. 2009).

A communication impermissibly threatens legal action where it falsely "communicate[s] that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made." Jenkins v. Union Corp., 999 F. Supp. 1120, 1136 (N.D. Ill. 1998) (also noting that § 1692e(5) is "aimed at preventing empty threats of litigation as a means of scaring the debtor into payment"); see also Day v. Check Brokerage Corp., 511 F. Supp. 2d 950, 956 (N.D. Ill. 2007) (finding that a threat to take legal action was made where the statements in the letter "taken as a whole, is that some type of legal action is about to be initiated and can be averted only by making a payment"). Whether a communication was false or misleading is a question of fact. Lox v. CDA, Ltd., 689 F.3d 818, 822 (7th Cir. 2012).

In this case, the parties dispute whether Defendant threatened to file suit. Plaintiff alleges that, during the June 9, 2011 call, Prebis (Defendant's collector) told Plaintiff that, if he did not enter into a specific payment arrangement, Defendant would file suit and get a judgment. This would constitute a threat to file suit. See, e.g., Jenkins,

999 F. Supp. at 1136 (noting that courts find "litigation threats, even in indirect or oblique statements, provided that they imply legal action is underway or contemplated in the near future").  In contrast, Defendant argues that there was no threat and that Prebis only advised Defendant that a collection lawsuit was a possibility.  If that were true, then there was no threat.  See, e.g., Jenkins, 999 F. Supp. at 1136  (action is threatened when the communication makes clear to the unsophisticated consumer that legal action is imminent or has been taken).  Because the parties dispute what Prebis said to Plaintiff, a factual issue remains whether a threat was made.  Therefore, the Court will proceed to determine whether a genuine issue of material fact remains on the issue of whether Defendant intended to sue or could legally sue.  See, e.g., Riddle & Assoc. v. Kelley, 2001 WL 1159211, at *5 (N.D. Ill. 2001) (genuine issues of material fact remained whether the letter communicated that legal action was imminent).

2.    Undisputed Facts Demonstrate that Defendant Intended to File Suit

As noted above, threats to sue do not violate the FDCPA unless the

threats are empty ones, "made when litigation was not actually intended." Porter v. Law Offices of Charles G. McCarthy, Jr. & Assocs., 2011 WL 3320331 at *7 (C.D. Ill. 2011).  When examining whether a debt collector intended to sue, "[t]here must be a particularized intention to sue a particular debtor if he or she does not pay." United States v. National Financial Serv., Inc., 98 F. 3d 131, 138 (4th Cir. 1996).

Defendant moves for summary judgment on this claim[1], asserting that the undisputed facts show that Defendant was fully prepared to file suit.  According to Defendant, Defendant had already initiated the internal process of filing a collection action by the time of the June 9, 2011 phone call and continued that internal process until Plaintiff filed the present action, at which time Defendant suspended further lawsuit preparation.  Def. Mt. for Summ. J. pp. 13-14  (d/e 46).

In support thereof, Defendant points to the following entries in the Defendant's account notes: (1) a May 31, 2011 account note, which

---

[1] Plaintiff does not move for summary judgment on this element of the claim. Instead, Plaintiff only seeks summary judgment on his claim that Defendant threatened to file suit but did not have the ability to file suit.

indicates "PREPARE SUIT IF READY" with code X42,  which is a diary

code to review the file in 35 days to determine whether it is suit worthy

(Freedman Dep. pp. 69-70); (2) a June 22, 2011 account note indicating

"PARA REVIEWED 4 SUIT–2 LP", which Freedman testified meant that

a paralegal reviewed the suit and saw nothing in the file that would

prohibit the filing of a lawsuit to attempt to collect the debt; that

conclusion resulted in the code LP which tells the legal processing team

to initiate the steps for preparing the suit papers (Freedman Dep. p. 78-

79); (3) a June 27, 2011 account note indicating "LTR TO COCO FOR

COURT DATE," which Freedman testified meant a letter was sent to co-

counsel in Montgomery County, where the suit would be filed (Freedman

Dep. p. 79-81).  The account notes further reflect that on July 11, 2011,

after Plaintiff filed the FDCPA lawsuit, a code was placed in the file to

inform the legal department not to prepare a complaint in the case.

Freedman Dep. pp. 82-84.

        Plaintiff argues that Defendant's threat to sue was false because, at

the time of the June 9, 2011 call, Defendant did not intend to sue

Plaintiff "right then and there."  Pl. Memo. Opp. p. 21 (d/e 50).

Specifically, Plaintiff asserts that, because Freedman unequivocally

testified that Defendant does not sue within the validation period,

Defendant did not intend to sue Plaintiff on June 9, 2011.  Pl. Memo.

Opp. pp. 21-22 (d/e 50).

The alleged threat, according to Plaintiff, was that Defendant

would sue Plaintiff and obtain a judgment if Plaintiff did not enter into a

particular payment plan.  The threat was not a threat to file suit within a

certain number of days.  If Defendant had threatened to file suit within a

number of days, the fact that Defendant does not sue within the

validation period would be relevant.  See, e.g., Oglesby v. Rotche, 1993

WL 460841, at *7 (N.D. Ill. 1993) (threatening to file suit within five

days when no suit was filed for over two months was deceptive).[2]

Instead, Plaintiff claims Defendant threatened that, if Plaintiff did

---

[2] Nor has Plaintiff asserted that Defendant never files suit in debt collection cases.  See, e.g., National Financial Serv. Inc., 98 F. 3d at 138 ( "there is no evidence that a determination to sue was actually made or even considered"); Arellano v. Etan Industries, Inc., 1998 WL 911729, at *4 (N.D. Ill. 1998) (finding no intent to sue where the creditor never filed suit to collect a debt).  Plaintiff, in fact, notes that Defendant has filed other complaints on behalf of Asset against debtors.  See Pl. Memo. Opp. p. 21 (d/e 50).

not enter into a particular payment arrangement with Defendant,
Defendant would file suit and obtain a judgment.  <u>See</u> Pl. Dep. pp. 61,
126.  The undisputed evidence in the record demonstrates Defendant
fully intended to file suit against Plaintiff, as evidenced by the notations
in the case file.

Even before the June 9, 2011 phone call, Defendant was
contemplating filing suit against Plaintiff.  <u>See</u> Def. Undisputed Fact No.
9 ("PREPARE SUIT IF READY").  Shortly after the June 9, 2011 phone
call, a paralegal reviewed the account and co-counsel in Montgomery
County was contacted.  <u>See</u> Def. Undisputed Fact No. 14.  These facts
demonstrate Defendant intended to file suit.  <u>See</u>, <u>e.g.</u>, <u>Bruesewitz v. Law
Offices of Gerald E. Moore & Assocs, P.C.</u>, 2006 WL 3337361, at *3
(W.D. Wis. 2006) (where the letter said nothing about when arbitration
might be initiated, the undisputed facts showed the defendants did
intend to file suit when the letter was sent because defendants routinely
initiated arbitration proceedings and there was nothing to suggest
defendants were not following their ordinary procedures).

The fact that Defendant did not file suit is not dispositive of whether Defendant intended to file suit.  A month passed between the June 9, 2011 phone call and when Defendant suspended lawsuit preparation due to Plaintiff filing the instant lawsuit filed July 8, 2011. Courts have held that the passage of such a short length of time is insufficient to show that a debt collector did not intend to file suit. See Hegwood v. Lighthouse Recovery Assoc., LLC, 2012 WL 693658, at *5 (N.D. Ind. 2012) (finding that the passage of two months between the threat and the filing of the federal FDCPA lawsuit by the plaintiff was insufficient to show that the defendant did not intend to sue);  Porter, 2011 WL 3320331, at *7 (the fact that the debt collector did not file suit during the one to three months between the debt collector sending three letters and the debtor filing the FDCPA lawsuit was "inadequate to demonstrate that Defendant's threat to sue was an empty one").  The passing of one month, particularly in light of the evidence in the record that Defendant was in the process of filing suit, does not raise a genuine issue of material fact as to whether Defendant's threat was an empty one.

In addition, the failure to file suit during the pendency of this FDCPA action does not indicate a lack of intent to file suit. See Porter, 2011 WL 3320331, at *7 (rejecting argument that the failure to sue while the FDCPA litigation was pending showed a lack of intent to sue, stating that "[a] creditor who brought suit in apparent response to the filing of a FDCPA action would appear to be acting in retaliation"). Therefore, Defendant is entitled to summary judgment on Plaintiff's claim that Defendant threatened to file suit when it did not intend to file suit.

3. <u>Undisputed Facts Demonstrate Defendant Had the Ability to File Suit</u>

Plaintiff asserts that he is entitled to summary judgment on the § 1692e(5) and (10) claim because Defendant threatened to file suit but did not have, nor could it obtain at the time of the threat, an assignment that complied with §8b of the Collection Agency Act ( 225 ILCS 425/8b). Defendant initially challenged Plaintiff's claim on the basis that Plaintiff asserted it was an entirely new theory of liability, never previously disclosed. See Def. Opp. p. 29 (d/e 51). This Court, however, granted the parties additional time to conduct discovery and file

supplemental briefs on this issue.  See Text Order of July 31, 2012.

Therefore, the Court will address the issue on the merits.

Plaintiff argues Defendant violated the FDCPA because (1)

Defendant did not have the documentation required by § 8b of the

Collection Agency Act when Defendant's collector threatened litigation;

(2) the documents produced purporting to demonstrate an assignment

fail to show an assignment of the debt from the creditor, Beneficial, to

Asset; and (3) the consideration reflected in the documents purporting to

demonstrate an assignment is not "open or precise."  See Pl. Mt. for

Summ. J. (d/e 48), Pl.'s Supp. Reply (d/e 61).  Defendant, in its

supplemental briefing, argues that Plaintiff failed to join a necessary

party, that the FDCPA cannot alter the scope of the Collection Agency

Act, and that the assignment is valid.  Because the record demonstrates a

valid assignment exists, Defendant's remaining arguments on this issue

will not be addressed.

A debt collector violates § 1692e of the FDCPA where the debt

collector threatens to take any action that cannot be legally taken.  15

U.S.C. § 1692e(5).  "Under Illinois law, a debt collector may sue a debtor only if the debt has been legally assigned to him." <u>Day</u>, 511 F. Supp. at 956.  Section 8b of the Collection Agency Act provides, in part, as follows:

> An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided:
>
> (a) The assignment is manifested by a written agreement, separate from and in addition to any document intended for the purpose of listing a debt with a collection agency. The document manifesting the assignment shall specifically state and include:
>
>> (i) the effective date of the assignment; and
>>
>> (ii) the consideration for the assignment.

225 ILCS 425/8b.

The Collection Agency Act does not apply to licensed attorneys at law.  <u>See</u> 225 ILCS 425/2.03 (providing that the Collection Agency Act does not apply to licensed attorneys at law).  However, at least one court

has found that FDCPA prohibits both the filing of collection lawsuits in violation of § 8b's documentation requirements and threatening to file a collection lawsuit without the required § 8b documentation.  See Grant-Hall v. Cavalry Portfolio Servs., LLC, 856 F. Supp. 2d 929, 945 (N.D. Ill. 2012).

In Grant-Hall, the plaintiffs filed suit under the FDCPA against  the debt-collection agency that had filed state court collection suits against the plaintiffs and the law firms that represented the debt-collection agency.  Grant-Hall, 856 F. Supp. 2d at 933.  The plaintiffs alleged that the defendants filed the state court actions even though the debt-collection agency did not have the documentation required by § 8b of the Collection Agency Act.  Grant-Hall, 856 F. Supp. 2d at 933.

The district court declined to grant a motion to dismiss the FDCPA claims against the debt-collection agency and the law firms.  The court held that "[t]he filing of a legally defective debt collection suit can violate § 1692e where the filing falsely implies that the debt collector has legal recourse to collect the debt."  Grant-Hall, 856 F. Supp. 2d at 944, citing

<u>Gearing v. Check Brokerage Corp.</u>, 233 F.3d 469 (7th Cir. 2000).

The district court found that the plaintiffs stated a claim against the debt-collection agency because the plaintiffs' FDCPA complaint alleged that the debt-collection agency brought the state court collection actions even though the agency lacked the documentation required by § 8b. <u>Grant-Hall</u>, 856 F. Supp. 2d at 945.  Therefore, the state court collection actions gave "the 'false impression' that the debt-collection agency had the 'legal status' necessary under § 8b to file the suits." <u>Grant-Hall</u>, 856 F. Supp. 2d at 945.

The <u>Grant-Hall </u>court also found that the FDCPA complaint stated a claim against the law firms. <u>Grant-Hall</u>, 856 F. Supp. 2d at 945. While noting that the law firms could not be sued under the Collection Agency Act, the district court found that the FDCPA prohibited the filing of lawsuits in violation of § 8b's documentation requirements. <u>Grant-Hall</u>, 856 F. Supp. 2d at 945. Therefore, the plaintiffs could sue the law firms under the FDCPA for filing a lawsuit in violation of § 8b's documentation requirement. <u>Grant-Hall</u>, 856 F. Supp. 2d at 945.  The

court additionally found that the plaintiffs had stated an independent §

1692e claim based on the attorney's alleged threat to file a collection

action without the required documentation.  <u>Grant-Hall</u>, 856 F. Supp. 2d

at 945.

The <u>Grant-Hall</u> court recognized, however, that, while the plaintiffs

had sufficiently pleaded a cause of action, the case would not proceed if

the debt-collection agency did, in fact, have the documentation required

by § 8b:

> Plaintiffs have acknowledged that their entire case
> rests on the premise that Defendants filed the
> state court collection actions even though [the
> debt-collection agency] did not have the
> documentation required by § 8b of the [Collection
> Agency Act]. . . . [The debt-collection agency]
> maintains that it did in fact have those documents
> when the state court actions were filed.  Because
> this case would end if [the debt-collection agency]
> is right, the court has invited [the debt-collection
> agency] to move without delay for summary
> judgment on that ground.  If that motion is filed,
> the court will determine whether [the debt-
> collection agency's] documents satisfied § 8b and
> therefore whether this case can proceed.

<u>Grant-Hall</u>, 856 F. Supp. 2d at 945; <u>see also</u>, <u>e.g.</u>, <u>Foster v. D.B.S.</u>

Collection Agency, 463 F. Supp. 2d 783, 804-05 (S.D. Ohio 2006)

(finding a violation of § 1692e(5) where the defendants never obtained

ownership of the debts through an assignment that complied with state

law).

Therefore, under the reasoning of the Grant-Hall case, if the record

demonstrates the existence of a valid assignment of the debt from

Beneficial to Asset that predates the June 2011 phone call, and, if

Defendant had the authority to sue on Asset's behalf, Defendant is

entitled to summary judgment on this claim.  The undisputed facts show

that Defendant had the legal authority and ability to file suit against

Plaintiff.

Specifically, Defendant submitted a redacted copy of the Law Firm

Collection Agreement between Defendant and Asset dated October 30,

2008.  See Defendant's Exhibit E in support of summary judgment (d/e

46-6).  The Agreement contains a provision providing as follows:

> 1.2  **Authority to Collect.**  Client hereby
> authorizes Law Firm to use any legal means
> (except for credit reporting) to collect the Account
> placed with Law Firm by Client.

Plaintiff has presented no evidence that Defendant lacked the authority from Asset to file suit.  Therefore, the undisputed facts show that Defendant had authority from Asset to file suit on its behalf.

That Asset had a valid assignment of the debt from Beneficial is also undisputed.  Defendant has demonstrated a valid assignment of Plaintiff's debt by pointing to several documents.  See  Unifund CCR Partners v. Shah, 407 Ill. App. 3d 737, 744 (2011) ("[A]n assignment under section 8b can be established through multiple documents that are incorporated by reference into the contract of assignment").

Defendant provided, under seal, the Account Purchase and Sale Agreement (Agreement).  The Agreement includes an Assignment and Bill of Sale.  The Agreement is made and entered by and between "HSBC Consumer Lending (USA) Inc. on behalf of and as managing company for Beneficial Company LLC and HFC Company LLC and their respective subsidiaries (collectively hereinafter referred to as 'Seller')" and Asset (the Purchaser). See Exhibit 5 (d/e 60) (emphasis added).  By its very terms, HSBC, as a disclosed agent on behalf of Beneficial, assigned

certain debts to Asset.  Therefore, Defendant has established a purported assignment from Beneficial to Asset.

Plaintiff argues that the assignment does not comply with the requirements of § 8b of the Collection Agency Act.  Pursuant to the statute, a valid assignment must be in writing and contain: (1) the effective date of the assignment; and (2) the consideration for the assignment.  225 ILCS 425/8b(a)(i), (a)(ii).  "Implicit in the statute is a third requirement that the contract of assignment specifically state the relevant identifying information for the account that is being assigned."  Unifund, 407 Ill. App. 3d at 744.

The assignment in this case meets the requirements of § 8b of the Collection Agency Act.  First, the Agreement is in writing.  Second, the Agreement contains an effective date of August 6, 2010.  See Agreement; see also Assignment and Bill of Sale (also containing the date of August 6, 2010).

Third, the Agreement  identifies the consideration paid.  The Agreement provides that the purchase price is disclosed in Exhibit A.

Exhibit A, entitled Closing Statement, indicates that the accounts being

sold have an unpaid balance of $504,477,400.16.  In the Exhibit A

provided by Defendant (d/e 60, p. 19), the Total Purchase Price is

partially redacted as it does not identify the number in the millions place:

"$__,442,682.18."

On January 17, 2013, this Court directed Defendant to file, under

seal, an unredacted copy of Exhibit A.  In response, Defendant informed

the Court that Defendant did not redact the document but that it was

produced that way by Asset in response to Defendant's subpoena.  See

Response (d/e 63).  On February 7, 2013, Defendant filed an unredacted

copy under seal.  See d/e 65.

Plaintiff argues that the consideration reflected is insufficient

because the assignment does not specifically indicate a dollar amount

paid for Plaintiff's account.  The cases cited by Plaintiff do not require

that the assignment indicate the individual consideration paid for each

account assigned as opposed to the entire portfolio of assigned accounts.

For example, in Business Serv. Bureau, Inc. v. Webster, 298 Ill.

App. 3d 257, 259 (1998), the court found that an assignment that stated the consideration was "'an agreed to percentage of the amount collected'" failed to meet the requirement of section 8b because the amount agreed to "could be anything from 100% to 0%."  In contrast here, the consideration paid for the portfolio of accounts was a specific sum.

Similarly distinguishable is <u>Mutual Management Servs., Inc. v. Swalve</u>, 2011 IL App (2d) 100778, 956 N.E.2d 594, 598 (2011), in which the trial court expressed concerns about an assignment that provided for "consideration to the assignee 'not to exceed' various percentages of the money recovered."  That court found the consideration issue resolved, however, by the amended complaint and new assignment documents that contained specific percentages for consideration.  <u>Id.</u> at 599.  Again, the assignment in this case provided a specific dollar amount for the portfolio of accounts assigned.

Finally, the assignment specifically states the relevant identifying information for the account being assigned.  The Agreement defines "accounts" to include the consumer loans identified in the electronic

media described in Exhibit B.

Exhibit B is the "Account Schedule" which reflects that 55,583 accounts were being sold.  The Account Schedule indicates that the accounts are listed individually on electronic media that would be delivered to the Purchaser by the Seller.  <u>See</u> d/e 60, p. 20.  Kenneth Proctor, the litigation manager for Asset, testified that Plaintiff's account was one of the accounts transferred.  Proctor Dep. p. 18-20 (attached to d/e 58); Exhibit 6 to the Proctor Dep. (showing information pulled from the electronic media regarding Plaintiff's account).  The information about Plaintiff's account included the account number, first and last name, social security number, address, phone number and a balance of $4,731.28.  Proctor Dep. p. 20.  Therefore, the undisputed facts show that the assignment included the relevant identifying information for the Plaintiff's account.  Therefore, even if Defendant's collector threatened to file suit, the threat was not false because the undisputed facts show that Defendant had the authority and ability to file suit.

**B.   Defendant is Entitled to Summary Judgment on Plaintiff's Overshadowing Claim Because Plaintiff Lacks Extrinsic Evidence of**

Confusion

Both parties seek summary judgment on Plaintiff's claim that Defendant overshadowed Plaintiff's right to dispute the validity of the debt. Plaintiff asserts that while the May 27, 2011 letter advised Plaintiff of his right to dispute the validity of the debt within 30 days, Prebis overshadowed that right when, on June 9, 2011, she allegedly told Plaintiff that Defendant would file suit and get a judgment if Plaintiff did not enter into a six-month payment arrangement.

The FDCPA requires debt collectors to send a consumer a "validation notice" within five days of its initial communication with the debtor. 15 U.S.C. § 1692g(b). The validation notice must explain that the consumer has 30 days to dispute the validity of all or a portion of the debt. Id. Moreover, "[a]ny collection activities and communications during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." Id. A communication "is contradictory if it would confuse or mislead an unsophisticated consumer

about her rights." <u>Flowers v. Accelerated Bureau of Collections</u>, 1997 WL 224987, at *1 (N.D. Ill. 1997); <u>see</u> <u>also</u> <u>Chauncey v. JDR Recovery Corp.</u>, 118 F.3d 516, 519 (7th Cir. 1997) (finding that a letter that explained the plaintiff's validation rights but also demanded receipt of payment within 30 days "would leave an unsophisticated consumer confused as to what his rights are")

However, the validation period is not a grace period. <u>Durkin v. Equifax Check Servs., Inc.</u>, 406 F.3d 410, 416 (7th Cir. 2005). In fact, a debt collector may demand payment or even sue within the validation period. <u>Durkin</u>, 406 F. 3d at 416. And a debt collector is not required to reiterate or refer to a validation notice in follow-up communications. <u>Durkin</u>, 406 F. 3d at 417.

Overshadowing nonetheless occurs when the debt collector indicates that the time for disputing the debt has passed or when the statements by the debt collector "misrepresent or cloud the amount of time remaining to dispute the debt." <u>Durkin</u>, 406 F. 3d at 417; <u>see</u> <u>also</u> <u>Bartlett v. Heibl</u>, 128 F. 3d 497, 500 (7th Cir. 1997) (letter that

contained both the 30-day validation notice and the additional language advising the debtor that, to resolve the matter before legal action is commenced, he must in one week either pay $316 dollars or contact the creditor to make payment arrangements violated § 1692g);  Jenkins, 999 F. Supp. at 1131 (request for immediate payment in same letter that granted the debtor 30 days to challenge the validity of the debt–without stating which provision took precedence– overshadowed the 30-day validation notice).

Moreover, the Seventh Circuit distinguishes between language rushing a debtor to take action, which does not overshadow the validation notice, and provisions that set deadlines contrary or contradictory to the 30-day validation period, which do overshadow the validation notice.  Zemeckis v. Global Credit & Collection Crop., 679 F.3d 632, 636-37 (7th Cir. 2012) (noting that a letter mentioning the debt collector's right to pursue legal action, even during the validation period, would not violate §1692g), cert. denied 133 S. Ct. 584 (2012).

The parties dispute what Prebis said during the phone conversation.

For purposes of Defendant's Motion for Summary Judgment, this Court will accept Plaintiff's version of the conversation.

Plaintiff testified that he told Prebis he wanted to finish paying the First Account and then apply those payments to the second account. Prebis wanted Plaintiff to pay $115 for four months and then pay the remaining balance within six months. Plaintiff told Prebis he could not do that. Prebis responded that Defendant would take Plaintiff to court and get a judgment against him. Plaintiff's affidavit also states that Prebis told him that if Plaintiff did not make payments on the account now, Defendant would sue him, take him to court, and get a judgment against him. See Def. Aff. ¶ 26. Plaintiff argues that this demand for payment, which occurred within the 30-day validation period, contradicted and overshadowed the 30-day validation notice in the May 27, 2011 letter. Plaintiff asserts that "Prebis created a sense of urgency when she told [Plaintiff] to agree to a payment plan or else face a judgment when in fact he had several more weeks to trigger his dispute rights and demand verification." Pl. Mem. in Opp. p. 25.

A claim that a statement is confusing falls into three categories: (1) cases where the allegedly offensive language is plainly and clearly not misleading or confusing; (2) cases where the language is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer; in that case, the plaintiff must produce extrinsic evidence to prove that unsophisticated consumers find the challenged statements misleading or deceptive; and (3) cases involving language plainly deceptive or misleading, in which case no extrinsic evidence is required.  See Lox, 689 F.3d at 822 (§ 1692e case, noting that whether an unsophisticated consumer would find certain language misleading is a question of fact); see also Scheunemann v. J.C. Christensen & Assocs., Inc., 802 F. Supp. 2d 981, 987 (E.D. Wis. 2011) (§ 1692g case), citing Ruth v. Triumph Partnerships, 577 F.3d 790, 790-801 (7th Cir. 2009).

Accepting Plaintiff's version of the phone conversation, the Court finds that, at most, Prebis' statements had the potential to mislead the unsophisticated consumer but were not misleading on their face.

The statements must be considered in context.  See, e.g., Olson v. Risk Management Alternatives, Inc., 366 F. 3d 509, 512 (7th Cir. 2004) (considering the context of the letters containing the allegedly overshadowing language).  Here, Plaintiff testified he wanted to finish paying the First Account and then apply those payments to the Asset account.  Prebis wanted Plaintiff to pay $115 for four months and then pay the remaining balance within six months.  When Plaintiff told Prebis he could not do that, Prebis responded that Defendant would take Plaintiff to court and get a judgment against him.

These statements are not, on their face, misleading or confusing regarding Plaintiff's ability to dispute the debt.  Prebis did not give Plaintiff a deadline that contradicted Plaintiff's right to dispute the debt within 30 days.  See, e.g., Chauncey, 118 F. 3d at 519.  Because the statements are not confusing on their face, Plaintiff is required to produce extrinsic evidence, such as expert evidence or consumer surveys, that unsophisticated consumers find the challenged statements misleading.  Chuway v. National Action Financial Servs., Inc., 362 F. 3d

944, 948 (7th Cir. 2004) (if it is unclear whether the letter would confuse the recipients, then the plaintiff must present evidence of confusion beyond his or her own say-so).  Plaintiff has not done so. Because Plaintiff has no extrinsic evidence of confusion, Defendant is entitled to summary judgment on this claim.

Moreover, even if the statements were facially confusing, Plaintiff did not testify that the statements by Prebis confused him about his ability to dispute the debt within 30 days.  Where a statement is confusing on its face, the plaintiff must still testify credibly that he was confused.  Chuway, 362 F. 3d at 948 (the plaintiff must also be representative of the type of people who receive that or a similar letter); Day, 511 F. Supp. 2d at 960 (finding the defendant was entitled to summary judgment where the plaintiff put forth no evidence that he was confused by the letters or that he was representative of people who receive the same or similar letters, and failed to provide any extrinsic evidence of confusion).

For all these reasons, Defendant is entitled to summary judgment

on Plaintiff's overshadowing claim.

**C.    Defendant is Entitled to Summary Judgment on Plaintiff's Claim that Defendant Violated § 1692e(2)(A) and § 1692f of the FDCPA By Misrepresenting the Amount of the Debt**

Section 1692e(2)(A) prohibits a debt collector from

misrepresenting the character, amount, or legal status of any debt.  15

U.S.C. § 1692e(2)(A).  Sections 1692f and f(1) prohibit a debt collector

from representing that an amount is due unless it is expressly authorized

by the agreement creating the debt or permitted by law.  15 U.S.C. §

1692f.  Plaintiff claims Defendant violates these sections of the FDCPA

when, in the May 27, 2011 letter, Defendant represented the balance

due on the account to be $5,943.23.

Defendant seeks summary judgment on this claim, arguing that

Plaintiff has no evidence to support his claim.  Defendant also argues

that all of the evidence demonstrates the total debt owed by Plaintiff was

$5,943.23 and, at a minimum, Defendant had a good faith belief that the

balance was correct.  The evidence Defendant cites to includes the Loan

Summary document reflecting a principal loan amount of $4,999.64 with

interest at 26.91%, Prebis' and Freedman's testimony that $5,943.23 was the amount of the account placed with Defendant by Asset, and the Affidavit from Asset indicating the account balance totaled $5,943.23.

This case is similar to Kasalo v. NCSPLUS Inc., 2011 WL 2582195 (N.D. Ill. 2011), which found that the defendant was not entitled to summary judgment on a claim that the defendant had misrepresented the amount of the debt.  In Kasalo, the plaintiff alleged the defendants violated § 1692e of the FDCPA by misrepresenting the amount of the debt.  The defendants moved for summary judgment.  The court noted that on a motion for summary judgment, the defendants could show an absence of a genuine dispute about the amount owed by either, citing to the parts of the record that proved the plaintiff owed the amount claimed or by showing that the plaintiff could not produce admissible evidence that he did not owe the amount claimed.  Kasalo, 2011 WL 2582195, at *3.  The court found, however, that the defendants did not show that the amount claimed was accurate and that their conclusory statement that "'Plaintiff has failed to present any evidence that the Plaintiff does not

owe" the amount claimed was insufficient for summary judgment.
Kasalo, 2011 WL 2582195, at *3.

The Kasalo court also rejected the defendants' claim that they were entitled to rely on the representation made by the creditor when the creditor placed the debt with the defendants for collection. Kasalo, 2011 WL 2582195, at *4. The court held, "It is not enough to blindly rely on the creditors' representation. The FDCPA is a strict liability statute, imposing liability even without fault." Kasalo, 2011 WL 2582195, at *4. Therefore, the court denied summary judgment. Kasalo, 2011 WL 2582195, at *4 (also noting that a debt collector could avoid liability by showing a bona fide error, but that the defendant failed to present evidence in support of such a defense).

Similarly here, Defendant fails to show that the amount claimed is accurate. The record shows that the balance on the debt was $4,731.28 when assigned to Asset, and was $5,943.23 when Asset placed the account for collection with Defendant (Asset charged 10% interest when it held the account). Defendant has not shown, however, how the

accuracy of the balance when the debt was assigned to Asset, particularly in light of Plaintiff's assertion that he made payment on the debt for some time before he lost his job.

Defendant does show, however, that Plaintiff cannot produce admissible evidence that he did not owe the amount claimed.  Plaintiff admitted at his deposition that while he did not believe that the amount sought was correct, he did not have any basis for knowing one way or the other if the amount was correct.  Pl. Dep. p. 97.  He lost a lot of his personal documents in a fire.  Pl. Dep. p. 29-32.  Plaintiff testified he did not have any record of how much he paid on the loan before it went into default.  Pl. Dep. p. 41, 106.  Because Defendant has shown that Plaintiff will be unable to prove he did not owe the amount claimed, Defendant is entitled to summary judgment on this claim.[3]

## D. Defendant is Entitled to Summary Judgment on Plaintiff's Claim that Defendant Violated §§ 1692e(2) and e(10) by Misrepresenting the Creditor Who Transferred the Debt to Defendant

---

[3] In addition, a simple amortization calculation of the debt, taking into account Plaintiff's claim that he made payments on the account for a year and a half, would result in a balance of $4,058.17 as of April 2005.

Plaintiff also asserts the Court should deny Defendant's motion for summary judgment under 1692e(2) and e(10) because the May 27, 2011 letter misrepresented the status of the debt by falsely stating that the captioned creditor – HSBC – transferred the debt to Defendant for collection when, in fact, Asset did.  Plaintiff claims the letter is false on its face in violation of 1692e(2) and e(10).

Plaintiff raises this argument for the first time in his response to Defendant's Motion for Summary Judgment.  Plaintiff did not allege Defendant violated the FDCPA in this manner in his Second Amended Complaint.  See d/e 26.  Plaintiff did not identify this ground as a basis of a 1692f(1) violation in his Answer to Interrogatories.  See Defendant's Exhibit F, Answer to Interrogatory No. 10 (asking Plaintiff to "Identify each and every fact and/or occurrence supporting the allegation that 'Defendants attempted to collect an amount not authorized by the agreement creating the Debt," to which Plaintiff responded, "Plaintiff intends to amend the Complaint to remove this paragraph.  As such, this Interrogatory is not relevant.") No other answer to any of the other

interrogatory questions identifies the misidentification of the creditor as a basis for the alleged FDCPA violations.

This Court has shown Plaintiff great leniency regarding his pleadings. For instance, the Court allowed the parties to conduct additional discovery and submit additional briefing on the issue of the assignment where Plaintiff did not raise the claim in the Second Amended Complaint or in discovery but did note the theory in a Motion to Compel. See July 31, 2012 Text Order. In this instance, however, Defendant has not been put on any notice that Plaintiff was challenging the May letter on the basis that it allegedly misrepresented who transferred the debt to Defendant. Therefore, the Court finds Plaintiff has forfeited this issue. Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

**E.  Defendant Has Failed to Demonstrate Defendant is Entitled to Summary Judgment on Plaintiff's Claim that Defendant Violated § 1692e(10) by Representing that Judgment was Inevitable**

Section 1692e(10) of the FDCPA prohibits debt collectors from using "any false representation of deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Plaintiff claims that Defendant violated § 1692e(10) when Prebis told Plaintiff that he had to make payments or Defendant would get judgment. According to Plaintiff, Prebis' representation that judgment was inevitable was a false and deceptive statement. According to Plaintiff, Prebis' statement ignored the actual options Plaintiff had and his ability to raise defenses to avoid the judgment.

Defendant asserts it is entitled to summary judgment on this claim because Prebis did not represent that judgment was inevitable or state that once judgment has been entered, Defendant would pursue post-judgment remedies. Defendant also asserts that even if Prebis did make such statements, several courts in other jurisdictions have held that such statements do not amount to a false representation.

However, Defendant is not entitled to summary judgment. Under

Plaintiff's version of the facts, Prebis told Plaintiff that if Plaintiff did not enter in the proposed payment arrangement, Defendant would take him to court and get a judgment against him.  Plaintiff also testified that Prebis told him that if Defendant took him to court and obtained a judgment against him, attorney fees and "all that stuff" would apply.

The Seventh Circuit recently addressed a similar issue in <u>Lox</u>, 689 F.3d 818.  In that case, the debt collector sent the plaintiff a letter stating: "Our client may take legal steps against you and if the courts award judgment, the court could allow court costs and attorney fees." <u>Lox</u>, 689 F.3d at 820-821.  The plaintiff filed suit, alleging that the language violated § 1692e of the FDCPA because the language falsely threatened that a court could award attorney fees.  <u>Lox</u>, 689 F.3d at 821. The magistrate judge handling the case by consent of the parties granted summary judgment in favor of the defendant, and the Seventh Circuit reversed.

The Seventh Circuit found that the plaintiff showed that the statement regarding attorney fees was false, material, and would mislead

the unsophisticated consumer.  First, the Seventh Circuit found that the statement, as written, was false because the defendant admitted "(through waiver) that the award of attorney fees was not a possible outcome." <u>Lox</u>, 689 F. 3d at 824.  Second, the Court found the statement misleading on its face because an unsophisticated consumer would "believe a debt collector when it says that attorney fees are a potential consequence of nonpayment." <u>Lox</u>, 689 F. 3d at 824-25 (because the statement was misleading on its face, the plaintiff was not required to present extrinsic evidence demonstrating the deceptive nature of the statement).

Finally, the Seventh Circuit found that the misleading statement was material because the misrepresentation could have had an effect on the plaintiff's decision about when to pay the debt.  That is, the plaintiff would not have to pay any additional money if he paid the debt immediately upon receipt of the letter but, if the statement regarding attorney fees were accurate, the decision to contest the debt could have been more costly.  <u>Lox</u>, 689 F. 3d at 827.

Similarly here, Plaintiff claims Prebis told him that if Defendant took him to court and obtained a judgment against him, attorney fees and "all that stuff" would apply.  The statement that attorney fees would apply would, at least on the record before this Court, be false because the Loan Summary does not indicate that Plaintiff agreed to pay attorney fees if the lender were required to file suit to collect the debt.  See, e.g., Negro Nest, LLC v. Mid-Northern Management, Inc., 362 Ill. App. 3d 640, 642 (2005) (under Illinois law, absent a contractual agreement, each party must bear its own attorney fees and costs).  Moreover, as the Seventh Circuit found in Lox, a statement that attorney fees would apply is material and would, on its face, confuse an unsophisticated consumer. See Lox, 689 F. 3d at 824-27.  Therefore, Defendant is not entitled to summary judgment on this claim.  See also, e.g., Oglesby, 1993 WL 460841, at *8 (applying least sophisticated consumer standard and finding that a letter that stated "once judgment has been entered, it is our intent to proceed with court ordered attachment and garnishment of all wages, property, and other financial assets, all at additional expense to

you" violated § 1692e by: (1) misrepresenting the breadth of the garnishment and attachment statutes; and (2) implying that garnishment of all wages and attachment of property was unavaoidable once court action has been initiated); Dutton v. Wolhar, 809 F. Supp. 1130, 1141 (D. Del. 1992) (finding, under the least sophisticated consumer standard, that the use of the phrase "once judgment is obtained" falsely represents the defendants' ability to secure judgment).

## F.   State Law Claims Are Considered Withdrawn

Plaintiff's Second Amended Complaint (d/e 26) contained three state-law claims: Count II, for violations of the Illinois Collection Agency Act (225 ILCS 425/1, et seq.), Count III, for violations of the Illinois Consumer Fraud and Deceptive Practices Act (815 ILCS 505/1 et seq.), and Count IV, for intentional infliction of emotional distress. Defendant's Motion for Summary Judgment seeks summary judgment on all three counts.

In response, Plaintiff asserts that the claims were withdrawn prior to motion practice. According to Plaintiff, on April 27, 2012, counsel for

Defendant sent a purported Rule 11 letter threatening that Defendant would seek sanctions if "the matter was not withdrawn by the summary judgment deadline[.]" Pl. Opp. to SJ, p. 31.  On May 15, 2012, Plaintiff notified defense counsel by letter that Plaintiff was withdrawing the state law counts.  Plaintiff asserts that because the claims were withdrawn, Defendant's motion is moot and should be denied.

In its Reply, Defendant argues the claims have not been withdrawn because Plaintiff did not seek leave to amend his complaint.  Defendant further points out that Plaintiff's letter purporting to withdraw the state law claims was sent less than three days before the summary judgment motions were due.  Defendant asserts it had largely completed its summary judgment papers by then.  Defendant asserts the claims are "live," the motion for summary judgment is unopposed, and summary judgment should be entered in Defendant's favor, after which Defendant intends to seek sanctions.

The Court will treat Counts II, III, and IV as informally withdrawn and dismiss Counts II, III, and IV with prejudice.  Defendant's Motion

for Summary Judgment on these counts is denied as moot.

## G.   The Doe Defendants Are Dismissed Without Prejudice

The Second Amended Complaint named "Does 1 through 10" as Defendants.  Plaintiff has never identified the Doe defendants.

Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, plaintiff must serve all defendants within 120 days after filing his complaint.  Discovery is complete, Plaintiff has not filed any motion identifying the Doe defendants by name, and Plaintiff has not had them served.  Therefore, Doe Defendants 1 through 10 are dismissed without prejudice.

## V.  CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment (d/e 46) is GRANTED IN PART and DENIED IN PART and Plaintiff's Motion for Summary Judgment (d/e 47) is DENIED.  Summary judgment is entered in favor of Defendant and against Plaintiff on Plaintiff's claims that Defendant (1) violated § 1692e of the FDCPA by threatening to take any action that could not legally be taken or that was

not intended to be taken; (2) violated § 1692g of the FDCPA by overshadowing Plaintiff's right to dispute the debt; (3) violated § 1692e(2) and (10) of the FDCPA by misrepresenting the entity that transferred the debt to Defendant for collection; and (4) violated § 1692e(2)(A) and § 1692f by misrepresenting the amount of the debt due. Defendant has not demonstrated it is entitled to summary judgment on Plaintiff's claim that Defendant violated § 1692e(10) by representing that judgment was inevitable and attorney fees would apply. Counts II through IV, having been withdrawn, are dismissed with prejudice. The Doe Defendants are dismissed without prejudice.

This case is set for a final pretrial conference on March 11, 2013 at 9:00 a.m. The case is set on the Court's trailing trial calendar for April 2, 2013 at 9:00 a.m. However, a firm trial date shall be scheduled by the Court at the final pretrial conference. The parties are advised to read the General Rules for Conduct of Counsel in the Courtroom and During Trial in Proceedings before U.S. District Judge Sue Myerscough, available at the Court's website: www.ilcd.uscourts.gov.

ENTER: February 8, 2013

FOR THE COURT:

_____s/Sue E. Myerscough_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
